**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**
**In Admiralty**

| | |
|---|---|
| **HERITAGE PHARMACEUTICALS INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **AGILITY LOGISTICS CORP., d/b/a SEAQUEST LINE,** <br><br> <u>Serve</u>: Corporation Service Company <br> 100 Shockoe Slip, Floor 2 <br> Richmond, VA 23219 <br><br> and <br><br> **HAPAG-LLOYD (AMERICA) LLC,** <br><br> <u>Serve</u>: CT Corporation System <br> 4701 Cox Road, Suite 285 <br> Glen Allen, VA 23060 <br><br> and <br><br> **VIRGINIA INTERNATIONAL TERMINALS, LLC,** <br><br> <u>Serve</u>: Sarah Jayne McCoy <br> 600 World Trade Center <br> Norfolk, VA 23510 <br><br> Defendants. | Civil Action No: 2:19-cv-152 |

## **<u>COMPLAINT</u>**

Plaintiff, HERITAGE PHARMACEUTICALS INC., by its attorneys Crenshaw, Ware & Martin, P.L.C., for its Complaint against the above-named defendants AGILITY LOGISTICS CORP., d/b/a SEAQUEST LINE, HAPAG-LLOYD (AMERICA) LLC, and VIRGINIA

INTERNATIONAL TERMINALS, LLC alleges upon information and belief as follows:

## PARTIES

1. At all material times, Plaintiff Heritage Pharmaceuticals Inc. ("Plaintiff" or "Heritage") was and now is a company organized under the laws of Delaware with a principal office and place of business at One Tower Center Boulevard, Suite 1700, East Brunswick, New Jersey 08816.

2. At all material times, Defendant Agility Logistics Corp. d/b/a Seaquest Line ("Agility"), was and now is a company organized under the laws of Delaware with a principal office and place of business at 310 Commerce, Irvine, California 92602.

3. At all material times, Defendant Hapag-Lloyd (America) LLC ("Hapag-Lloyd") was and now is a company organized under the laws of Delaware with a principal office and place of business at 399 Hoes Lane, Piscataway, New Jersey 08854.

4. At all material times, Defendant Virginia International Terminals, LLC (the "Terminal") was and now is a company organized under the laws of Virginia with a principal office and place of business at 601 World Trade Center, Norfolk, Virginia 23510.

## VENUE AND JURISDICTION

5. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333 and the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.*

7. This Court has personal jurisdiction over each Defendant, as the events giving rise to this action occurred within the Commonwealth of Virginia and the Defendants operate or

otherwise transact business within the Commonwealth of Virginia.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this action occurred at Norfolk International Terminals in Norfolk, Virginia.

## FACTS

9. Heritage is a company that acquires, develops, markets, sells, and distributes pharmaceuticals.

10. On June 30, 2018, Agility issued an original bill of lading, B/L number BOMO492458/003 (the "Bill of Lading"), to Heritage, as consignee, for transport of a refrigerated container (No. HLXU8769821) containing 562 packages of pharmaceuticals (hereafter the "Pharmaceuticals" or the "Cargo") from Mumbai, India to Norfolk, Virginia aboard the Motor Vessel APL ANTWERP ("M/V APL ANTWERP"). A copy of the Bill of Lading is attached as **Exhibit A**.

11. The Bill of Lading states, in part: "Total Packages 562."

12. The Bill of Lading also states, in part: "TEMP RANGE +15 to 25 Degree."

13. On July 2, 2018, Hapag-Lloyd issued a sea waybill, SWB-No. HLCUBO1180684592, (the "Sea Waybill") to Agility for transport of the Pharmaceuticals in 562 packages in one refrigerated container (the "Container"), from Jawaharlal Nehru, India, the port of loading, to Norfolk, the port of discharge, on the M/V APL ANTWERP, voyage number 8126. A copy of the Sea Waybill is attached as **Exhibit B**.

14. The Sea Waybill states, in part, that there are "562 packages."

15. The Sea Waybill states, in part, that the container temperature was to be set at "+18.0 C."

16. The Cargo was aboard M/V APL ANTWERP when it subsequently arrived at the

Terminal within the port of Norfolk, where the Cargo was to be discharged.

17. During discharge operations at the Terminal on or about July 29, 2018, the Container with Plaintiff's Cargo was knocked off the M/V APL ANTWERP and into the harbor.

18. The Cargo was knocked into the water by a Terminal gantry crane.

19. The Cargo was knocked into the water by a gantry crane operated by a Terminal employee.

20. The Container was floating and partially submerged in the water before it was recovered and placed on the dock.

21. As a result of the incident, the Pharmaceuticals became wet and were exposed to temperatures well above the noted product temperature requirements.

22. Prior to the incident, the Pharmaceuticals had a value of $209,220.48.

23. As a result of the incident, the Pharmaceuticals were without value and a total loss.

24. Heritage incurred and paid $1,051.64 in clearance charges, transport charges, and insurance charges to Indicus Pharma LLC in connection with shipment of the Pharmaceuticals. See **Exhibit C**, Debit Note from Indicus Pharma LLC.

25. Heritage also incurred and paid $7,135.82 in freight in connection with the shipment of the Pharmaceuticals. See **Exhibit D**, Agility Container Freight Invoice.

26. As a result of the incident, the cargo was unusable, and Heritage was forced to replace a portion of the Pharmaceuticals. The Glipizide 2.5 mg. and Metformin HCL 500 mg. Heritage incurred and paid additional air freight charges in the amount of $3,394.74 for transport of replacement Glipizide and Metformin HCL. See **Exhibit E**, Agility Air Freight Invoice.

27. Heritage may incur other expenses as a result of the incident, including, but not limited to, additional storage charges and the expense to dispose of the Pharmaceuticals. Such

additional amounts, if any, have not yet been ascertained.

## COUNT I – CARRIAGE OF GOODS BY SEA ACT, 46 U.S.C. § 30701
### (against Agility and Hapag-Lloyd)

28. Paragraphs 1 through 27 are incorporated herein as if fully restated.

29. Agility acted as a non-vessel operating common carrier with respect to the Cargo.

30. Under its Bill of Lading to Heritage, Agility was obligated to deliver the Cargo at the port of Norfolk in good and marketable condition.

31. The Agility Bill of Lading provides for shipment of 562 packages.

32. Hapag-Lloyd, as the carrier under the Sea Waybill, was obligated to ensure that the Cargo was discharged at the port of Norfolk in good and marketable condition.

33. The Hapag-Lloyd Sea Waybill provides for the shipment of 562 packages.

34. Agility and Hapag-Lloyd breached their respective obligations to Heritage by failing to ensure that the Cargo was discharged at the port of Norfolk in good and marketable condition.

35. As a result of this breach, Heritage has been damaged in a total amount in excess of approximately $220,802.68.

## COUNT II – BREACH OF CONTRACT
### (against Agility)

36. Paragraphs 1 through 35 are incorporated herein as if fully restated.

37. The Bill of Lading is a valid and enforceable contract.

38. The Bill of Lading provides for shipment of 562 packages.

39. Agility had a duty to Heritage under the Bill of Lading to ensure that the Cargo was discharged at the port of Norfolk in good and marketable condition.

40. Agility breached its duty to Heritage by failing to ensure that the Cargo was

discharged at the port of Norfolk in good and marketable condition.

41.  As a result of this breach, Heritage has been damaged in a total amount in excess of approximately $220,802.68.

### COUNT III – BREACH OF CONTRACT
### (against Hapag-Lloyd)

42.  Paragraphs 1 through 41 are incorporated herein as if fully restated.

43.  The Sea Waybill is a valid and enforceable contract.

44.  As the non-vessel operating common carrier, Agility is an agent of Heritage under the Sea Waybill and with respect to Hapag-Lloyd.

45.  Hapag-Lloyd owed a duty to Heritage to ensure that the Cargo was discharged at the port of Norfolk in good and marketable condition.

46.  Hapag-Lloyd breached its duty to Heritage by failing to ensure that the Cargo was discharged at the port of Norfolk in good and marketable condition.

47.  As a result of this breach, Heritage has been damaged in a total amount in excess of approximately $220,802.68.

### COUNT IV – NEGLIGENCE
### (against the Terminal)

48.  Paragraphs 1 through 47 are incorporated herein as if fully restated.

49.  The Terminal had a duty to exercise care in conducting its operations so as not to damage or otherwise injure the Cargo during cargo operations involving M/V APL ANTWERP.

50.  The Terminal breached its duty of care when its gantry crane, operated by a Terminal employee, knocked the Cargo overboard and into the harbor.

51.  The Cargo remained afloat and partially submerged in the harbor before it was recovered and placed on the dock.  The Pharmaceuticals became wet and were exposed to

temperatures above the noted product temperature requirements.

52. As a result of the Terminal's actions, the Cargo was a total loss and Heritage incurred damages in excess of approximately $220,802.68.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Heritage Pharmaceuticals Inc. prays that this Court enter judgment in its favor against Defendants Agility Logistics Corp., d/b/a Seaquest Line, Hapag-Lloyd (America) LLC, and Virginia International Terminals, LLC, jointly and severally, in the amount of $220,802.68, or other amount to be ascertained; and award Plaintiff such other and further relief as the Court deems just and proper.

Dated: Norfolk, Virginia

March 29, 2018

**HERITAGE PHARMACEUTICALS INC.**

　_/s/ Steven M. Stancliff_　
Steven M. Stancliff, VSB No. 73853
Christine Ganley McMurdo, VSB No. 89188
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Tel: (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com
cmcmurdo@cwm-law.com
*Attorneys for Plaintiff*